IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT, IN AND FOR COLLIER COUNTY, FLORIDA

IN RE: THE ESTATE OF
LINDA K. YANNONE,

Deceased.
_____________________________/

PROBATE DIVISION
File #25-CP-163

**PETITION FOR AN ORDER TO RELEASE ESTATE ASSETS**

**COMES NOW,** Brian McNamara, Esq., Personal of the Estate of Linda K. Yannone, by and through his undersigned counsel, and files this Petition for an Order to Release Estate Assets:

**STATEMENT OF FACTS**

1. The Decedent, Linda K. Yannone died on December 28, 2024 in Collier County, Florida.
2. At the time of the Decedent's death she was a minority shareholder, with 25.8% of the shares of Arena Food Service, Inc. an Illinois Corporation.
3. A dispute as to the valuation of the shares has arisen and a Complaint was filed by Arena Food Service, Inc. in Illinois State Court for Declaratory Relief.
4. The Personal Representative, by and through his legal counsel has sought to move the dispute to Florida Federal Court under various reasons including diversity, amount in contest, applicable law.
5. Arena Food Service, Inc. has regularly paid a quarterly dividend to the Decedent, and the Estate until the 3rd Quarter of 2025.
6. The Board of Directors, all of whom are shareholders voted to withhold the dividend from the estate on or about October 31, 2025. See Attached, Exhibit A.
7. Accordingly, the Arena Food Service, Inc. placed the 3rd Quarter Dividend belonging to the Decedent's Estate in the custody of the INB, National Association in an account named "Arena Food Service Inc. Escrow Account for Disputed Dividends". Exhibit B
8. The Estate was not notified of a meeting of the Board of Directors, by Counsel for the Corporation, but not until after the date of the meeting stated above, nor was it party to any escrow agreement.
9. Arena Food Service, Inc. has not made any claim in this probate matter as to being a creditor or claimant of the decedent's assets.
10. There is no Order or Judgment in this or any other Court that has determined the value and rights as to the shares and their corresponding value. Nor has a dispute been raised as to the Estate's status as record shareholder when the dividend was declared, therefore Arena Food Service, Inc has no right to withhold a properly withheld dividend.
11. The INB, National Association, sent a letter dated December 12, 2025 to the Personal Representative, wherein the letter states "We will comply with valid legal orders from a court of appropriate jurisdiction, but we believe that we are not simply obliged to turnover funds surrounding a dispute of this nature merely because one party believes they may have a superior position." Exhibit C.

12. The INB, National Association also states in its letter that although the title of the account is an escrow account, the banks letter refutes the claim that there is in fact an escrow agreement and that no escrow agreement exists. This statement is in direct contradiction to Arena Food Service, Inc's letter indicating that the funds are in escrow, which has certain requirements under the laws of the State of Illinois that have not been satisfied here.
13. Arena Food Service, Inc. in its Notice of Special Directors Meeting states "The Estate's refusal to sell Linda Yannone's shares, however, would result in the Estate continuing to receive distributions it would have otherwise never received, which in turn it will use to fund its litigation against the company."
14. There is currently a matter pending before the United States District Court for the Central District of Illinois, Case No. 25-CV-03311 CRL-DJQ between Arena Food Service, Inc. and the Estate of Linda Yannone as it relates to a stock valuation for stock valuation, but not as to entitlement of a dividend.
15. There is no interlocutory order of that court authorizing the withholding of funds, nor is there a Motion before that court by Arena Food Service, Inc. inquiring about what to do with the funds.

**JURISDICTION OVER INB, NATIONAL ASSOCIATION and ARENA FOOD SERVICE, INC.**

1. INB, National Association has a physical presence in the State of Florida and therefore it is subject to in personam jurisdiction. The address of the Florida INB, National Association branch is 2222 West Swann Avenue, Tampa, FL 33606.
2. Arena Food Service, Inc. utilized INB, National Association for deposit of disputed funds that are in dispute with a Florida Estate, and acknowledged the same in the Notice of Special Director's Meeting. The tortious interference with a beneficial interest is cause for long-arm jurisdiction. *See* Fla. Stat. §48.193 (1)(2)

**ARGUMENT I**
**(FAILURE TO PROPERLY CREATE AN ESCROW AGREEMENT)**

Notice and Due Process: The estate was not given notice of the Notice of Special Directors Meeting, or the escrow arrangement between Arena Food Service, Inc. and INB, National Association, contravening principles of fairness and due process.

Non-Party Escrow Agreements: Illinois law stipulates that escrow agreements cannot bind non-parties without their explicit consent (Szafranski v. Dunston, 2015 IL App (1st) 122975).

Authority of the Corporation: Unless specified in the bylaws or on stock certificates, the corporation cannot demand shares on behalf of shareholders (805 ILCS 5/6.55). As noted in Exhibit A, the "[C]ompany, on behalf of the shareholders, on April 8, 2025" made an offer. No documentation has been provided to the Personal Representative that the "Company" has the right to make an offer on behalf of the other shareholders.

The INB, National Association, knew or should have known not to accept the funds without either an escrow agreement or the consent of the Estate by and through the Personal Representative, as evidenced by the title of the account denoting "Disputed Dividends". *See Exhibit B.*

The INB, National Association is subject to personal jurisdiction in this state as it has a physical presence and avails itself of the state and its laws. As a consequence INB, National Association is subject to the enforcement of the Personal Representative's duty and authority to secure estate assets.

Both Illinois (810 ILCS 5/3-420) and Florida (Fla. Stat. § 673.4201) have adopted UCC § 3-420, establishing liability for conversion of instruments. The title of the account should constitute prima facia evidence that the assets were subject to a dispute and INB, National Association willfully turned a blind-eye to the state(s) and federal obligations.

## ARGUMENT II
## (BAD FAITH and OPPRESSIVE CONDUCT OF BOARD OF DIRECTORS)

Both Florida Courts and Illinois Courts have protections of Minority Shareholders against a Board of Directors who use their position to oppress conduct of the Minority Shareholder. *See* Fla. Stat. §607.0830 and Illinois Code 805 ILCS 5/12.56.

Arena Food Service, Inc. has all but admitted to the intentional suppression of a minority shareholder's rights without the justification for the same in a Court of Competent Jurisdiction, wherein a case is currently pending. Illinois also has two laws that create causes of action against (see the comment in the Notice of Special Directors meeting regarding litigation) the Directors and the Corporation for using its position against a minority shareholder is bad faith and may be a cause of action for the Minority Shareholder or the forced dissolution of the company. *See* Fla. Stat. § 607.1430 and 805 ILCS 5/12.56.

## ARGUMENT III
## (WITHHOLDING DIVIDENDS TO IMPAIR LITIGATION)

**Hagshenas v. Gaylord**, 199 Ill.App.3d 60, 557 N.E.2d 316 (2d Dist. 1990), the court held that using corporate control to disadvantage a shareholder in litigation violates fiduciary duties. As previously noted, the Notice of Special Directors Meeting specifically references the intention of withholding the dividend to impair the Minority Shareholder rights to fund its litigation costs/needs. The Court held that the admission was a matter of Bad Faith Per Se.

Illinois has specific requirements to determine the ownership interest in shares of closely held corporate stock, the procedures required by law were not complied with in this matter. Unless specifically authorized on the stock certificates themselves or the bylaws state that the Corporation can act on behalf of the shareholders, the Illinois Code prohibits such action.

## PRAYER FOR RELIEF

1. Immediate release of estate assets held by INB, National Association to Brian McNamara, Esq. as Personal Representative of the Estate of Linda K. Yannone.
2. Attorneys Fees and Costs borne by the Personal Representative on behalf of the estate in enforcement of the return of unlawfully held assets.
3. Injunctive Relief, prohibiting Arena Food Service, Inc. from further withholding of the Estate Dividends.
3. Any other relief the Court deems fair and just.

CERTIFICATE OF SERVICE

I certify that a copy of this motion was served by service of process to the address of record for the entity INB, National Association at 322 E Capitol, Springfield, IL 62701, Shaun Moore, CEO of Arena Food Service, Inc., 3086 Normandy Rd Springfield, IL 62703


Sebastian Nye-Schmitz, Esq.
Attorney for Personal Representative
sns@swfltaxlaw.com
The Nye-Schmitz Law Firm, P.A.
Fla. Bar No.: 99072
5425 Park Central Court
Naples, FL 34109
P: (239) 210-5088
F: (239) 300-9941

Brian McNamara, Esq.
Attorney for Guardian
McNamara Legal Services, P.A.
Florida Bar No. 98022
5425 Park Central Court
Naples, Florida 34109
Phone: 239-204-4766
Fax: 239-204-4767
Email: brian@mcnamaralegalservices.com

David M. Giangrossi
Litigation Attorney for the Estate
Floridalaw2016@gmail.com
David M. Giangrossi Legal Services, PA
Fla. Bar No.: 116169
5425 Park Central Court
Naples, FL 34109
P: 847-508-9011
F: 239-593-1169

EXHIBIT
A

**NOTICE OF SPECIAL DIRECTORS MEETING**
**Scheduled for October 31, 2025 at 10am via zoom**

Pursuant to Article III, Sections 4 and 5 of the Arena Food Service, Inc. by-laws, and Shaun Moore, in his capacity of President of Arena Food Service, Inc. ("Arena" or "Company"), hereby calls a special meeting of the board of directors via written notice to each director. Although neither the business to be transacted, nor the purpose of the meeting need be specified, the board will be asked to address continued distributions to the Estate of Linda Yannone.

Under Article VIII, Distributions, the board of directors may authorize, and the corporation may make distributions to its shareholders, subject to any restrictions in the articles of incorporation or provided by law.

Section 1(b) of Arena Food Service, Inc. Shareholders' Agreement states in relevant part:

> (b) Upon the death of any shareholder the remaining shareholders shall, within one hundred-twenty (120) days after such death, have the opportunity to purchase his shares at such value as determined under Section 2 of this agreement and under the same terms as Section 1(a) of this agreement.

Linda Yannone owned two hundred fifty-eight (258) shares of Arena Food Service, Inc. on the date of her death: December 26, 2024. One hundred-twenty (120) days after Linda Yannone death occurred on or about April 27, 2025. The Estate of Linda Yannone, however, refused the opportunity to the remaining shareholders to purchase her shares as specified in the Shareholders' Agreement, despite a written demand by the Company, on behalf of the shareholders, on April 8, 2025.

Section 2 of the Shareholders' Agreement provides the purchase price of Arena's shares shall be determined by the following formula:

> The "net income from continuing operations" for the corporation (*as determined by the corporation's then accountants*) shall be determined for the last 12 full months preceding the event which triggers the prospective sale of stock. The net income from continuing operations for the twelve (12) months shall be multiplied by five and the total shall be divided by the number of shares of the corporation which are then issued and outstanding. The result shall be the price per share at which the shares must be offered to the corporation and the remaining shareholders. (Emphasis added).

At the time of Linda's death, Keber, Eck & Braeckel LLP ("KEB"), the corporation's then accountant, determined that based on Arena's net income from continuing operations for the twelve (12) months preceding Linda's death, the "per share value" of the shares of Arena possessed by Linda's Estate was $82. The Estate of Linda Yannone contested the valuation by the Company's then accountants and refused to offer the remaining shareholders the opportunity to purchase Linda Yannone's shares as the price specified in the Shareholder's Agreement.

The question the board will be asked to address is whether the Estate should be allowed to continue to receive distributions or dividends solely because the Estate has unilaterally breached the express terms of the Shareholder's Agreement. There can be no factual dispute that had the Estate complied with the Shareholder's Agreement, it would no longer be a shareholder and/or be entitled to distributions or dividends as of April 27, 2025. The Estate's refusal to sell Linda Yannone's shares, however, would result in the Estate continuing to receive distributions it would have otherwise never received, which in turn it will use to fund its litigation against the company.

The board will be asked to decide, therefore, whether the distributions that would otherwise by paid toward Linda Yannone's 258 shares should be placed in an interest-bearing escrow account until the litigation now pending is resolved. This would allow distributions to the shareholders be unabated while still addressing the financial concerns of the company related to the pending litigation. The funds being held in escrow would then be distributed based on the final determination of the Court.

Finally, pursuant to Article III, Section 10, the authority of the board of directors may be exercised without a meeting if consent is secured in writing, setting forth the action to be taken, if signed by all the directors entitled to vote. Accordingly, if you are so inclined to vote in favor of the proposed action in lieu of the meeting, please signify your consent via signature and notation before 5pm Central Time on October 30, 2025.

Shaun M. Moore 10 / 30 / 2025

Shaun Moore Date

I [ x ] agree and consent [ ] do not agree or consent to the proposed action.

Sherri Madonia 10 / 30 / 2025

Sherri Madonia Date

I [ x ] agree and consent [ ] do not agree or consent to the proposed action.

Jill Bonnette 10 / 30 / 2025

Jill Bonnette Date

I [ x ] agree and consent [ ] do not agree or consent to the proposed action.

Anthony Yannone 10 / 29 / 2025

Anthony Yannone Date

I [ x ] agree and consent [ ] do not agree or consent to the proposed action.

Anna Yannone 10 / 29 / 2025

Anna Yannone Date

I [ x ] agree and consent [ ] do not agree or consent to the proposed action.



Doc ID: 4f25a30c83ee60080793fe8605c4bfcf2545191d

EXHIBIT
B

ARENA FOOD SERVICE INC
ESCROW ACCOUNT FOR DISPUTED DIVIDENDS
3086 NORMANDY ROAD
SPRINGFIELD IL 62703

Statement Date: 12/01/2025

Account No.: [redacted] Page: 1

This Statement Cycle Reflects 33 Days

THE PIN-LESS DEBIT DISCLOSURE
REQUIRED ANNUALLY BY VISA IS
AVAILABLE AT WWW.INB.COM/PINLESS-DEBIT.

## BUSINESS SAVINGS SUMMARY

Type : REG Status : Active

| Category | Number | Amount |
|---|---|---|
| New Account On 10/30/25 | | 0.00 |
| Deposits | 1 | 16,770.00+ |
| Withdrawals | | 0.00 |
| Ending Balance On 12/01/25 | | 16,770.00 |
| Average Balance (Collected) | 16,770.00+ | |

Direct Inquiries About Electronic Entries To:
Phone: (217) 747-5500

## DEPOSITS AND OTHER CREDITS

| Date | Type | Amount | Date | Type | Amount | Date | Type | Amount |
|---|---|---|---|---|---|---|---|---|
| 10/30/25 | Deposit | 16,770.00 | | | | | | |

INB
We Make Banking Easy

December 12, 2025

Mr. Brian McNamara, Esq.
5425 Park Central Court
Naples, Florida 34109

EXHIBIT
C

Re: Estate of Linda K. Yannone (the "Estate")

Dear Mr. McNamara:

We reviewed your correspondence dated December 4, 2025 regarding the above-referenced Estate, but respectfully decline to turnover the requested funds until we receive formal order from a court of appropriate jurisdiction. While we respect your position, we simply do not agree with some of the asserted facts.

INB does not have "custody" of the funds in the capacity claimed. We hold funds on deposit under a traditional deposit relationship established by Arena Food Service, Inc. ("Arena"). INB is not an escrow agent, nor is there any agreement establishing any agency or other escrowee relationship between Arena and INB. Arena chose to give the account subtitle when the account was opened; INB does not control this line item. INB has not nor will it take a position related to any dispute between Arena and the Estate, and we cannot speak to any of the allegations raised in your correspondence, the declaratory judgment action or the Estate itself.

While you raise an issue of Illinois law, we are not an escrow agent, but rather, the bank of deposit for funds that were deposited by Arena. Clearly there is a dispute related to those funds, but we are not a party to any legal action nor are we taking a position one way or another relative to the claims raised in those legal actions.

You also raise Florida law and our availment to a Florida forum, but we are also bound by national banking laws and regulations that protect the privacy and security of funds within our institution. The funds deposited are presumably owned by Arena, since they originated with Arena when they opened the account and deposited the funds. Without a court order specifically directing any withdrawal of the funds, we must defer to the deposit agreement with our account holder.

We recognize that you may disagree with our position. We will comply with valid legal orders from a court of appropriate jurisdiction, but we believe that we are not simply obliged to turnover funds surrounding a dispute of this nature merely because one party believes they may have a superior position. We are confident that the courts involved are the best arbiters for dealing with and providing direction for funds that are within their jurisdiction.

Should you have any questions, please feel free to contact me anytime at (217) 747-5887.

Very truly yours,

INB, N. A.

By: ______________________
Joshua Ishmael
SVP, General Counsel